[Civ. No. 307. Second Appellate District.—September 28, 1908.]

## W. R. HOMAN, Respondent, v. JOHN WAYER and AMER-ICAN BONDING COMPANY OF BALTIMORE, Appellants.

NOTARY PUBLIC—LIABILITY ON OFFICIAL BOND—FALSE ACKNOWLEDG-MENT—IMPERSONATION OF OWNER—PROOF NOT SHOWN.—A notary public is liable on his official bond for damages resulting to the plaintiff from a false acknowledgment by him from an impersonator of ·the owner, whom he did not know, but falsely stated to be known by him to be the person described in the instrument and who executed the same, no proof by a credible witness being taken or shown in the certificate.

ID.—ACKNOWLEDGMENT EXPRESSLY FORBIDDEN.—The statute expressly forbids the notary from taking the acknowledgment at all, unless he knows the person making it to be the proper person, or takes the proof of a credible witness to that effect, and certifies the fact of such proof in the certificate of acknowledgment, as required by law.

ID.—PURPOSE OF CERTIFICATE—IDENTITY OF GRANTOR—GENUINENESS OF SIGNATURE.—The notary is not required to certify to the ownership of the property, but the purpose of the certificate is to establish the identity of the grantor and the genuineness of the signature to the deed.

ID.—CERTIFICATE OF PERSONAL KNOWLEDGE NOT SUPPORTED BY OATH.— A certificate of personal knowledge of the notary cannot be justified by swearing the person who executed the instrument, or any other person, or by the statement of any other person not known to him.

ID.—CREDIBLE WITNESS MUST BE KNOWN TO NOTARY.—When the proof of a credible witness is taken to be recited in the certificate, the credible witness must himself be known to the notary, which is implied from the requirement that the officer shall certify that such person is a credible witness.

ID.—CONSPIRACY TO DEFRAUD OWNER—NEGLIGENCE OF NOTARY NOT EX-CUSED.—The fact that there was a conspiracy by other persons to defraud a purchaser of the property cannot relieve the notary from liability on his bond for loss to the plaintiff, who relied on the certificate of acknowledgment when paying out his money for the property.

ID.—PROXIMATE CAUSE OF INJURY—RECOVERY FOR LOSS DUE TO FALSE CERTIFICATE.—No official misconduct or neglect of a notary in certifying the acknowledgment of a deed could ever be the *sole* proximate cause of injury to any person, but it cannot be said for that

reason that no recovery can be had for loss due to a false certificate of acknowledgment.

ID.—TITLE IN NAME ASSUMED BY CO-CONSPIRATOR—SUPPORT OF FINDING—RELIANCE UPON FALSE CERTIFICATE—PASSAGE OF TITLE.—The fact that the title appears to stand in a name assumed by one who was a co-conspirator with the false impersonator of the owner of the property, and commended such person to the notary as the true owner, cannot affect a finding supported by evidence that plaintiff relied upon the false certificate of the notary that such person was personally known to him to be the grantor described in the instrument. A deed in such assumed name conveyed as good a title as if the property had stood in the real name of such co-conspirator.

ID.—PRIVITY OF CONTRACT NOT REQUIRED TO SUPPORT RECOVERY—ACTION BY PURCHASER—SPECIAL DAMAGE.—By the weight of authority and by the rule in this state, privity of contract is not required to sustain a cause of action for loss arising from a breach of official duty of the notary and special damage resulting to the injured party; and a purchaser of the property who has suffered special damage from a false certificate of acknowledgment by a notary in the chain of title may recover therefor upon his official bond, though having no privity of contract with the notary.

ID.—RIGHT OF ACTION ON BOND OF NOTARY STATUTORY.—The right of action on the bond of the notary is statutory, and rests upon section 801 of the Political Code, which provides that "for the official misconduct or neglect of a notary public, he and his sureties on his official bond are liable to the parties injured thereby for all the damages sustained."

ID.—DEPOSITIONS FOR PLAINTIFF—UNFAIRNESS NOT SHOWN—DISCRETION OF COURT.—The fact that, in case of depositions taken for the plaintiff, the plaintiff saw and glanced over the interrogatories when opened by the notary four days before one of the depositions was taken, and received what purported to be a copy of the interrogatories by the same mail as the originals were received by the notary when the other deposition was taken, did not necessarily render the taking of such depositions, or either of them, unfair under the provisions of section 2033 of the Code of Civil Procedure, and the court did not abuse its discretion in receiving them in evidence against objections thereto.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial. W. P. James, Judge.

The facts are stated in the opinion of the court.

Hunsaker & Britt, for Appellants.

Byron L. Oliver, and Grant Jackson, for Respondent.

TAGGART, J.—This is an action brought to recover from the defendant Wayer, as a notary public, and the defendant corporation as surety on his notarial bond, the sum of $550, damages alleged to have been sustained by reason of a false and deceptive certificate of acknowledgment made by said notary. Judgment was for plaintiff, and defendants appeal from the judgment and from an order denying their motion for a new trial.

On the twenty-eighth day of November, 1903, plaintiff, who was then living in Omaha, Nebraska, purchased from one J. A. Overholtzer, who was acting under the assumed name of Carl Anderson, five acres of land located in Pasadena, California. The transaction took place in Omaha, and Overholtzer as evidence of his title presented an abstract of title made by the Pomona Abstract and Trust Company showing title in the premises vested in Mary E. Griswold and a grant, bargain and sale deed from Mary E. Griswold to Carl Anderson. dated September 26, 1903. To the latter was attached the certificate of acknowledgment in question, wherein defendant Wayer, as a notary public of Los Angeles county, California, certified in the usual form, under date of September 26, 1903, "before me, . . . personally appeared Mrs. Mary E. Griswold, a widow, known to me to be the person whose name is subscribed to the within instrument, and acknowledged to me that she executed the same."

Upon this showing the parties entered into a preliminary contract and conveyances were executed. Plaintiff made inquiry by mail through parties residing near the premises as to the value of the property, its location, and so forth, and upon receipt of a certificate of title from the Pomona Abstract and Title Company showing the title regular in accordance with the representations made by Anderson, the deeds were recorded, and plaintiff paid to Anderson $550 cash, and executed and delivered a note and mortgage for deferred payment of $500 in accordance with the contract.

The person who acknowledged the Griswold-Anderson deed before the defendant Wayer was not Mary E. Griswold, but one Emma W. Allen who impersonated Mary E. Griswold in the execution and acknowledgment of that deed. Defendant Wayer does not contend that he knew the woman whom he certified to be Mary E. Griswold. His knowledge of her identity was gained by an introduction from Overholtzer, a

man whom he did not know, a reassuring remark or two from this man, and an "oath" administered to the woman herself at the time of taking her acknowledgment. If we were permitted to consider the so-called "oath" of the woman as proof or evidence upon which the notary could base his certificate, it did not establish the things which he is required to know and certify. The essential fact to be known by, or proven to, the notary is that the person making the acknowledgment is the person described in and who executed the instrument. The woman who executed the deed was asked if her name was Mary E. Griswold and if she was the sole owner of the property. Her name might have been Mary E. Griswold, and she not the person described in the deed. The notary is not required to certify to the ownership of the property (*Overacre* v. *Blake,* 82 Cal. 77, [22 Pac. 979]; *Barnard* v. *Schuler,* 100 Minn. 289, [110 N. W. 966]), and this only indirectly bore upon the matter to be certified. The purpose of the certificate is to establish the identity of the grantor, and genuineness of the signature to the deed.

Section 1185 of the Civil Code reads: "The acknowledgment of an instrument *must not be taken,* unless the officer taking it knows, or has satisfactory evidence, on the oath or affirmation of a credible witness, that the person making such acknowledgment is the individual who is described in and who executed the instrument," etc. Section 1189 provides "substantially" the form of the certificate, which in the respect here important reads: "personally appeared ————, known to me (or proved to me on the oath of ————) to be the person whose name is subscribed to the within instrument, and acknowledged that he executed the same."

A certificate of personal knowledge is not justified by swearing the person who executed the instrument or any other person. The statute draws a distinction between those "known" and those "proven to be" the individual described in the instrument. In the former case no taking of testimony and no "satisfactory evidence" is required; it is sufficient that the officer knows. If the officer does not "know," then the law makes it his duty to inform himself by satisfactory evidence on the oath or affirmation of a credible witness. In this event he is called upon to certify by whose oath it was proven to him that the person whose acknowledgment was taken is the person described in the instrument. The witness

by whose oath the execution of the instrument is proven, when the person executing the instrument is not previously known to the officer, must himself be known to the notary. This is implied by the requirement that the officer shall certify that such person is a credible witness. A person who is not sufficiently known to the notary to authorize the latter to certify to his identity without proof is not sufficiently known to him to be a credible witness to prove either his own or some one else's identity. When the person seeking to have his identity certified does not comply with these rules, the notary is expressly prohibited from taking the acknowledgment at all. When the notary does not obey this statute, he should expect to be held liable. (*Joost* v. *Craig,* 131 Cal. 509, [82 Am. St. Rep. 374, 63 Pac. 840].)

This is not a case where a mistake was made through inadvertence, or one in which due precaution was taken, the statute fully complied with, and still the notary was deceived. It is not within the exception stated in the Joost-Craig case, but comes clearly within the rule of law declared in the case of *State* v. *Meyer,* 2 Mo. App. 413, therein cited. The facts in the Missouri case were much less favorable to the plaintiff than those here. The evidence there showed throughout the transaction a singular disregard, upon the part of the persons relying upon the false certificate, of all the precautions which are ordinarily suggested by experience of men of adult years, and yet a judgment against the notary was affirmed. The court says: "Others may have been guilty of contributory negligence; but, if the careless act done by Meyer (the notary) was necessary to the accomplishment of the loss, there can be little doubt that, in a proper form of action, he alone may be made answerable for the resulting damages." With that case and the case of *Oakland Bank* v. *Murfey,* 68 Cal. 455, [9 Pac. 843] (relied upon by appellants), before it, the supreme court of this state accepted the Missouri case as authority and distinguished the Oakland Bank case in the opinion in the Joost-Craig case.

It is apparent, then, that the fact that others have aided in the transaction, and contributed to bringing about the conditions from which the plaintiff's loss arose, does not relieve defendants from liability for the loss of the plaintiff, if the latter relied upon the false certificate when paying out his money. In taking an acknowledgment to a deed a notary's

official services are limited. He certifies to the identity of the grantor named in the instrument, but he has no control over the deed to which his certificate is attached. This must be delivered to the grantee by the grantor, or some one on his behalf, in order to become effective. No *official* act of the notary in certifying an acknowledgment to a deed can alone result in injury to anyone. The deed cannot become the means of defrauding anyone until used in some transaction entirely outside of the official duties of the notary. For this reason the statutory right of action is not dependent upon a showing that the acts of others have not contributed to the injury, or defeated by a showing that they have so contributed, if it appear that the party defrauded relied upon the notary's false certificate.

The terms, "proximate cause," "negligence," and "contributory negligence," as used in appellants' presentation of the case, are somewhat misleading here. No official misconduct or neglect of a notary public in taking or certifying the acknowledgment of a deed could ever be the *sole* proximate cause of loss or injury to any person, but we cannot for that reason say no recovery can be had for a loss due to a false certificate of acknowledgment under the provisions of section 801 of the Political Code.

The evidence shows and the court finds, in effect, that plaintiff here did rely upon the false certificate of the defendant. This finding is not affected by the fact that the title of Overholtzer to the land stood in an assumed name. A deed in this name conveyed as good title as if the property had stood in the real name of the party. (*Wilson* v. *White,* 84 Cal. 239, [24 Pac. 114] ; *Eversdon* v. *Mayhew,* 85 Cal. 1, [21 Pac. 431, 24 Pac. 382].) If it be contended that this circumstance put plaintiff upon inquiry, it may be said that if he had made inquiry as to the identity of the grantee in the Griswold-Anderson deed, he would have discovered that Overholtzer was the man he was dealing with, but he would also have learned that Overholtzer and Anderson were one, and that the title of the land was held in the latter name as was represented to him. Inquiries were made by plaintiff by mail as to the possession, the value, the location and character of the land. He found the possession to be that of Mrs. Griswold, a widow from Iowa. The misrepresentations made by Anderson relating to matters of value were apparently discounted in the

price paid. These did not of themselves suggest anything calling for a further inquiry as to title. The possession of the premises, as disclosed by plaintiff's inquiries, was that of the party in whom the title appeared to be vested by the abstract. This only confirmed the apparent regularity of, and made more effective, the false certificate of the defendant. The evidence sustains the implied finding of the court, that plaintiff acted with ordinary business prudence in making inquiry before paying his money to Overholtzer, and justifies the trial court's conclusion that the defendant Wayer's official misconduct was the cause of plaintiff's injury and loss.

Many cases are cited and several quotations from textwriters presented by the appellants to sustain the contention that a public officer is answerable only to the person employing him, or where a certificate is issued to the parties to the instrument which he certifies. It is contended that the obligation of the officer and his sureties to pay damages for loss resulting from official misconduct rests upon a privity corresponding to what is called privity of contract, and that in order that the injured party may recover he must establish relations analogous to these. (Citing 5 Thompson on Negligence, sec. 6405; 2 Cooley on Torts, 3d ed., 782, etc.) We do not think it necessary to distinguish these authorities or the cases upon which they rest any further than they have been by declarations of the principles above applied. The rule declared by them is accepted in some jurisdictions, but is not supported by the weight of authority (*Lammon* v. *Feusier,* 111 U. S. 21, [4 Sup. Ct. Rep. 286] ; *State* v. *Ryland,* 163 Mo. 280, [63 S. W. 819]), and is not consistent with that adopted in this state at an early date (*Van Pelt* v. *Littler,* 14 Cal. 194), and which still continues to be applied by our supreme court. (*Felonicher* v. *Stingley,* 142 Cal. 630, 632, [76 Pac. 504].) No privity between the parties is necessary to recovery. The cause of action arises from the breach of official duty by the officer and the special damage to the injured party. (*Doeg* v. *Cook,* 126 Cal. 213, [77 Am. St. Rep. 171, 58 Pac. 707].)

The right of action here is statutory, and rests upon section 801 of the Political Code, which reads: "For the official misconduct or neglect of a notary public, he and his sureties on his official bond are liable to the parties injured thereby for

all the damages sustained." By section 794 it is made the duty of a notary to take acknowledgments and give certificates thereof. This must be done in accordance with law, or there is a breach of official duty. The loss sustained is that which is the result of official misconduct or neglect. (*Heidt* v. *Minor,* 89 Cal. 118, [26 Pac. 627], S. C. 113 Cal. 389, [45 Pac. 700].)

There is nothing in the record to show an abuse of discretion on the trial court's part in overruling defendants' objections to the introduction of the depositions of the plaintiff. That the plaintiff should have seen and glanced over the interrogatories when opened by the notary four days before one of the depositions was taken, and received what purported to be a copy of the interrogatories by the same mail as the originals were received by the notary, when the other deposition was taken, did not necessarily render the taking of such depositions or either of them unfair under the provisions of section 2033 of the Code of Civil Procedure.

In our opinion, the demurrer to the second amended complaint was properly overruled, and the findings and decision find ample support in the evidence.

Judgment and order affirmed.

Allen, P. J., and Shaw, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on November 27, 1908.